**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KARL WECKEL,**

                                        **Plaintiff,**

         **vs.**                                                    **8:20-CV-200**
                                                                    **(TJM/CFH)**

**JACK RUGAR CUSTOM PAINTING, LLC, and**
**JACK RUGAR, Individually,**

                                        **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

# ORDER

Plaintiff Karl Weckel filed a verified complaint on February 24, 2020.  See dkt. # 1.

Plaintiff alleges that he made an agreement in September 2018 with the Defendant, Karl

Rugar, to paint the exterior and portions of the interior of a property Plaintiff owned in

Keene Valley, New York.  Id. at ¶¶ 3, 8.  While Rugar did some initial preparation work on

the property, he did little to complete the work.  Id. at ¶¶ 9-12.  Over the next year, Rugar

offered various reasons for failing to finish the job.  Id. at ¶ 13.  During that period, "Rugar

performed no additional work on either the interior or exterior of the Property."  Id. at ¶ 16.

When Rugar eventually returned to the property, he did not finish his task in a timely

fashion.  Id. at ¶¶ 20-25.  He worked on other customers' jobs when he should have been

working at Plaintiff's property.  Id. at ¶ 26.  Rugar never painted the exterior of the

property.  Id.  ¶ 27.  Plaintiff also alleges that Rugar provided fraudulent invoices claiming

hours for work he and his crew never did.  Id. at ¶¶ 28-29.

On November 7, 2019, the day that Weckel learned that painting on the property's interior had been completed, Plaintiff issued and hand delivered Rugar two checks.  One check was for $12,425.00 and the other for $4,500.  Id. at ¶ 37.  Plaintiff "issued the Checks as a matter of good faith and based upon promises of future performance," even though Rugar had engaged in "unjustified delays" and the parties had disputed how to apply an initial payment of $3,000.  Id.

On November 11, 2017, a crew that Plaintiff engaged to clean up after Rugar's work "discovered that the adhesive that Rugar placed on the flooring and/or the length of time Rugar left the adhesive on the flooring damaged the floors" of Plaintiff's property.  Id. at ¶ 39.  Plaintiff also learned that the Defendant's powerwashing had damaged the wood of the property's exterior, and that his failure to paint the exterior in the year after he powerwashed it had also caused damage.  Id. at ¶ 41.  Efforts by Rugar's wife to fix the interior damage he caused only led to more damage.  Id. at ¶¶ 47-49.  Defendant did not keep his promise to obtain insurance funds to fix the damage.  Id. at ¶ 52.  When he learned of the damage to the interior, Plaintiff tried to stop payment on the two checks.  Id. at ¶ 40.  Weckel then learned from his financial adviser that the checks "were not valid because his financial investment company had changed the financial institution it uses to clear the checks drawn on its accounts."  Id.  Plaintiff was unaware of that issue when he wrote the checks.  Id.

Despite his knowledge that the invoices he submitted to Plaintiff contained charges for work that had not been performed and that he had damaged the property, Rugar caused his counsel to write Plaintiff a letter demanding payment in the amount of $17,015

on December 23, 2019.  Id. at ¶¶ 53-54.  Defendant's letter threatened to "'refer the matter

to the District Attorney's Office' and seek criminal sanctions against" Weckel.  Id. at ¶ 54.

Plaintiff's attorney responded on January 9, 2019 by explaining that Plaintiff disputed the

amounts owed and expressing "'grave concerns with your client threatening criminal

actions in an effort to gain advantage in a civil consumer claim which it knows is

disputed.'"  Id. at ¶ 55.  Plaintiff's counsel also informed Defendant that Plaintiff was

obtaining estimates to repair the damage that Rugar caused; he expected those estimates

to exceed the amount that Rugar claimed Plaintiff owed.  Id. at ¶ 56.

Rugar's counsel did not respond.  Id. at ¶ 57.  Instead, on February 3, 2020, Rugar

filed a Notice of Mechanic's Lien, claiming Plaintiff owed him $17,015.  Id. at ¶ 58.  Plaintiff

learned of the lien on February 14, 2020.  Id.  Plaintiff alleges that Rugar has also

continued to pursue criminal sanctions against him.  Id. at ¶ 59.   A New York State Police

Investigator contacted him about the claim on February 21, 2020.  Id. at ¶ 60.  Plaintiff

filed the instant Complaint on February 24, 2020.

Plaintiff's Complaint contains eight causes of action.  Count One alleges breach of

contract by Rugar's conduct in failing to complete the agreed-upon job.  Count Two

alleges unjust enrichment when Rugar kept the initial payment and did not perform the

work as agreed.  The third cause of action alleges fraud in his statements and promises to

Rugar concerning the hours he claimed that his employees worked on Plaintiff's property,

the statements on the mechanic's lien, and promises that his insurance would cover

repairs to the property.  Count Four seeks a declaratory judgment finding that Plaintiff

willfully exaggerated that amount of the lien on the property and a declaration from the

Court that the lien is void, that Rugar cannot make recovery under the lien, and that Rugar

has no right to file any other or further lien for any work allegedly performed on the property.  Count Six alleges slander of title/improper cloud of title.  Count Seven alleges abuse of process when Rugar sought criminal sanctions against Plaintiff.  Count eight alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a).  Plaintiff seeks declaratory judgment and compensatory and punitive damages.  He claims that the Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state-law claims.  See 28 U.S.C. § 1331.

The Court issued summons on February 25, 2020.  See dkt. # 2.  Plaintiff filed affidavits of service on March 25, 2020.  See dkt. #s 4-5.  The affidavits revealed that the Complaint had been served on the Defendant on March 6, 2020.  Id.  Plaintiff filed a request for entry of default on March 30, 2020.  See dkt. # 6.  The Clerk of Court entered default against Defendant on that day.  See dkt. # 7.  Plaintiff filed the instant motion for default judgment on March 31, 2020.  See dkt. # 9 .

Federal Rule of Civil Procedure 55(b)(2) permits the Court to enter default judgment on a party's motion after the Clerk of Court has entered default against a party.  Fed. R. Civ. P. 55(b)(2).  "The disposition" of such motions "are left to the sound discretion of a district court[.]"  Enron Oil Co. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  When a party defaults, the "court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [his] favor[.]"  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).  Still, the court "is also required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law[.]"  Id.  "While a default constitutes an admission of all facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action."  Am.

4

Diamond Tool & Guage, Inc. v. De Beers Cosol Mines, Ltd., 119 F.Supp.2d 418, 420

(S.D.N.Y. 2000).   "[T]he district court has discretion under Rule 55(b)(2) once a default is

determined to require proof of necessary facts and need not agree that the alleged facts

constitute a valid cause of action[.]"  Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d

Cir. 1981).

Plaintiff's Complaint alleges one basis for this Court's jurisdiction: the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.  "The Fair Debt Collection

Practices  Act establishes certain rights for consumers whose debts are placed in the

hands of professional debt collectors for collection, and requires that such debt collectors

advise the consumers whose debts they seek to collect of specified rights."  DeSantis v.

Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001).  To state a claim under the

FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person

who has been the object of efforts to collect a consumer debt, and (2) the defendant

collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in

any actor or omission in violation of FDCPA requirements."  Polanco v. NCO Portfolio

Mgmt., 132 F.3d 567, 578 (S.D.N.Y. 2015) (quoting Plummer v. Atl. Credit & Fin., Inc., 66

F.Supp.3d 484, 488 (S.D.N.Y. 2014)).

"The plaintiff in an FDCPA action bears the burden of proving the defendant's debt

collector status."  Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374

F.3d 56, 60 (2d Cir. 2004). The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any
> business the principle purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or indirectly, debts owed or due or
> asserted to be owed or due to another . . . the term includes any creditor who, in
> the process of collecting his own debts, uses any name other than his own which

would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1592a(6).  A creditor is "any person who offers or extends credit creating a

debt or to whom a debt is owed[.]" 15 U.S.C. § 1692a(4).  The Second Circuit Court of

Appeals has interpreted this definition to "[establish] two predicates for 'debt collector'

statuts–engaging in such activity as the 'principal purpose' of the entity's business and

'regularly' engaging in such activity."  Goldstein, at 61.[1]

Plaintiff has alleged facts in his Complaint and provided evidence in his motion for

default judgment that makes clear Defendant is not a debt collector within the meaning of

the FDCPA, and therefore that Plaintiff cannot raise a FDCPA claim.  Plaintiff alleges that

the debt that Defendant sought to collect from Plaintiff was debt Defendant claimed

---

[1]Goldstein dealt with whether a law firm's business made it an entity that regularly
engaged in debt collection activity, thus qualifying as a debtor under the FDCPA.  374
F.3d at 58-59.  The Court found that "whether a lawyer or law firm 'regularly' engages in
debt collection activity within the meaning" of the FDCPA "must be assessed on a case by
case basis in light of factors bearing on the issue of regularity."  Id. at 62.  The Court listed
the following factors:

> (1) the absolute number of debt collection communications issued, and/or
> collection-related litigation matters pursued, over the relevant period(s), (2) the
> frequency of such communications and/or litigation activity, including whether any
> patterns of such activity are discernable, (3) whether the entity has personnel
> specifically assigned to work on debt collection activity, and (5) whether the activity
> is undertaken in connection with ongoing client relationships with entities that have
> retained the lawyer or firm to assist in the collection of outstanding consumer debt
> obligations.  Facts relating to the role debt collection work plays in the practice as a
> whole should also be considered to the extent that they bear on the question of
> regularity of debt collection activity (debt collection constituting 1% of the overall
> work or revenues of a very large entity may, for instance, suggest regularity,
> whereas such work constituting 1% of an individual lawyer's practice might not).
> Whether the law practice seeks debt collection business by marketing itself as
> having debt collection expertise may also be an indicator of the regularity of
> collection as a part of the practice.

Id. at 62-63.

Plaintiff owed him.  That debt arose because of work that Defendant did for Plaintiff, a dishonored check, and a dispute about whether Defendant performed the work as agreed by the parties.  Plaintiff's complaint also makes clear that Defendant's principal work is home painting and repair, not collecting debts.  Plaintiff has therefore alleged that Defendant is a "creditor," not a debt collector.  The evidence provided in his motion for default judgment also makes clear that Defendant sought to collect the debt in his name, not under an assumed name.  Under those circumstances, Plaintiff has failed to state a valid cause of action under the FDCPA.

Plaintiff asserts this Court's jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. The only cause of action in Plaintiff's Complaint that "arises under" the laws of the United States is his FDCPA claim.  The Court has supplemental jurisdiction over Plaintiff's other claims, which arise under New York law, because those causes of action "are so related to claims in the action within" the Court's "original jurisdiction taht they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). When a court dismisses "all claims over which it has original jurisdiction," a court "may decline to exercise supplemental jurisdiction" over state-law claims.  28 U.S.C. § 1367(c)(4).  "While" a court is not required to dismiss "pendent state-law claims where all of the federal claims have been dismissed . . . 'if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.'" Giordano v. City of New York,

274 F.3d 740, 754 (2d Cir. 2001) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726-67 (1966) (internal citations omitted)).

The Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss the case without prejudice to repleading in a proper forum.  The issues remaining in the case are state-law issues which can be resolved in a New York court.  As the issues have not been joined, and the statute of limitations has not run on any of Plaintiff's claims, the Court finds no prejudice in dismissing the case at this point.

As such, Plaintiff's motion for default judgment, dkt. # 9, is hereby DENIED.  The Court finds that Plaintiff has failed to state a claim under the FDCPA and will dismiss that claim, with prejudice.  The Court declines to exercise supplemental jurisdiction over the rest of Plaintiff's claims, and dismisses the case without prejudice to re-pleading in an appropriate forum.  The Clerk of Court is directed to CLOSE the case.

**IT IS SO ORDERED**


Dated: August 10, 2020



Thomas J. McAvoy
Senior, U.S. District Judge